IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 98–cr-40093-SMY |
| | ) |
| | ) |
| JAMES F. WILLIAMS, a/k/a "JW," | ) |
| Defendant. | ) |
| | ) |

## ORDER

**YANDLE, District Judge:**

This matter comes before the Court on Defendant James F. Williams' motion for a reduction of his criminal sentence following the retroactive application of the Fair Sentencing Act of 2010, Pub. L. 111-220; §§ 2-3, 124 Stat. 2372, 2372 (2010), as set forth in the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018) (Doc. 151), which the Court construes as a motion pursuant to 18 U.S.C. § 3582(c)(1)(B). Assistant Federal Public Defender Angela Hill entered her appearance on Defendant's behalf (Doc. 162) and filed a supplemental motion (Doc. 163). Williams seeks a sentence reduction to time served and three years of supervised release. The Government opposes the Motion (Doc. 173).

The Court conducted a hearing on the motion on March 23, 2022. For the following reasons, and those stated on the record, Defendant's motions are **DENIED**.

## Background

In 1999, Williams was convicted of two counts conspiracy to distribute crack cocaine and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), one count of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 2), and distribution and possession

with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) (Count 3) (Docs. 78-80). The indictment did not list the drug amounts (Doc. 8). The Presentence Investigation Report (PSR) determined that the total amount of crack cocaine was 1,213.96 grams, which coverts to 24,259.2 kilograms of marijuana (Doc. 114 at 11). The total amount of powder cocaine was 155.9 grams, which converts to 31.18 kilograms of marijuana. *Id.* The PSR relied on the cross reference at U.S.S.G. § 2D1.1(d)(1) and applied U.S.S.G. § 2A1.1 because a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 in furtherance of the Court 2 drug conspiracy. *Id.* at 12. A total offense level 45 and criminal history category VI resulted in a mandatory guideline range of life imprisonment on Count 1, and 240-months' imprisonment on each of Counts 2 and 3. *Id.* at 17, 23. Williams was sentenced on June 8, 2000, to life imprisonment on Count 1 and 240-months on each of Counts 2 and 3, to be served concurrently; a $1,500 fine; and a $300 special assessment (Doc. 116).

## Discussion

Congress passed the Fair Sentencing Act of 2010 which reduced the crack-to-powder penalty disparity from 100:1 to 18:1. Pub. L. No. 111-220, 124 Stat. 2372 (2010); *Dorsey v. United States*, 567 U.S. 260, 263–64 (2012). In 2018, Congress made this reduction retroactive when it enacted the First Step Act of 2018, permitting courts to reduce the sentences of defendants convicted of a "covered offense" before August 3, 2010. Pub. L. No. 115-391, 132 Stat. 5194 (2018). A court's authority to reduce a sentence under the First Step Act applies only to (1) federal offenses (2) committed before August 3, 2010, the effective date of the Fair Sentencing Act, (3) for which the Fair Sentencing Act changed the statutory penalty range, *i.e.*, certain crack cocaine offenses. *See* First Step Act, § 404(a). Whether to reduce a sentence under the First Step Act is within the discretion of the Court. *See* First Step Act, § 404(c).

The parties agree that Williams is eligible for relief under the First Step Act.  The Government, however, urges the Court to exercise its discretion to deny relief.  In determining whether to reduce Williams' sentence, the Court must consider his pre-sentence and post-sentence conduct, including the relevant factors in 18 U.S.C. § 3553(a)[1].  *Id.* at 741-42.  And while the Court is not bound to grant a reduction based on current statutes, guidelines, or sentencing law, they are also relevant to its consideration.  *Id.* at 741-42.

Williams has an extensive and violent criminal history, and his offenses of conviction are intertwined with the murder of Jerome Townsend (*See*, Doc. 173 at 10-19).  As governor of the Gangster Disciples (GD) in Carbondale, Illinois, Williams recruited members and oversaw the gang's criminal operations.  Between the ages of 21 and 52, he had been convicted of 13 separate felony convictions and several offenses that did not result in convictions, including several battery charges (Doc. 114 at 51-57, 59-64, 69-71, 74, 75).  He committed many of these offenses while under court-imposed supervision, and his supervision was revoked in at least five cases.  *Id.* at 51-54, 60.

Notwithstanding his history, Williams asserts that he no longer poses a danger to the community.  Williams is 74 years old and suffers from various medical conditions.  He points out that during his twenty plus years of incarceration, he has incurred only one disciplinary violation: a 2009 violation for destroying a mattress.  He has maintained employment, completed 4,000 hours in quality control and inspection apprenticeship program, and completed other physical and educational programs (Doc. 163-1).  Factory Manager S. Whitecotton described Williams as a dependable worker who demonstrates "mature thinking" (Doc. 163-4).  If released, he will live in

---

[1] These factors include: the nature and circumstances of the offense; the history and characteristics of defendant; the need for the sentence to reflect the seriousness of the offense provide just punishment and promote respect for the law; the need for general deterrence; and the need to protect the public from defendant's further crimes.  18 U.S.C. § 3553(a).

Carbondale with Robert Kelley, a family friend, until he is able to secure his own place (Doc. 190). Mr. Kelley, whose family owns a business where Williams previously worked, indicates that he has a job available for Williams upon release (Doc. 190-1).

Despite Williams' age, medical conditions, and the positive aspects of his course during incarnation, he remains a danger to the public. Williams acknowledges that he has maintained his association with the Gangster Disciples while incarcerated. According to staff at USP Marion, Williams "was in full control of the GD inmate population across the entire compound," he continued to participate in GD meetings and was involved in their business operations (Doc. 173 at 24), including trafficking drugs in the fall of 2020.[2]

Because Williams continues to demonstrate a lack of respect for the law, that he has been undeterred from criminal activity, and that he continues to pose a significant danger to the community, a reduction in his sentence is not warranted at this time. Accordingly, Williams' motion and supplemental motion (Docs. 151 and 163) are **DENIED**.

**IT IS SO ORDERED.**
**DATED:  March 25, 2022**

2022.03.25
11:49:32
-05'00'

**STACI M. YANDLE**
**United States District Judge**

---

[2] The Government produced to defense counsel documentation of Williams' association and activities with the Gangster Disciples during his incarceration at USP Marion, which the Court reviewed during the hearing. The documentation has not been filed for safety and security reasons.